**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**
**AT KANSAS CITY**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| MISHA COBBINS | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| KANSAS CITY BOARD OF PUBLIC | ) | |
| UTILITIES, in the name of and on behalf of | ) | |
| the Unified Government of Wyandotte | ) | |
| County and Kansas City, Kansas | ) | |
| | ) | |
| Serve:  Kansas City Board of Public Utilities | ) | |
| 540 Minnesota Ave, | ) | |
| Kansas City, KS 66101 | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff Misha Cobbins ("Plaintiff"), by and through counsel, pleads as follows for her Complaint against the Kansas City Board of Public Utilities:

**Parties and Jurisdiction**

1.      Plaintiff is an individual, 53 years old, an African American female, a citizen of the United States, and a resident of Wyandotte County, Kansas.

2.      Defendant Kansas City Board of Public Utilities (the "BPU") is a self- governed non-for-profit municipal utility acting as an administrative arm of the Unified Government of Wyandotte County and Kansas City, Kansas (the "Unified Government").  It has capacity to

be sued in the name of and on behalf of the Unified Government.  K.S.A. § 13-1223.  At all relevant times the BPU had fifteen or more employees.

3.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 10, 2024 alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act 29 U.S.C. § 621 *et seq.* ("ADEA") by the BPU. A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto and incorporated by reference as Exhibit A.

4.      The EEOC issued Plaintiff a Notice of Right to Sue pertaining to the aforesaid Charge on or about April 24, 2025. A true and correct copy of Plaintiff's Notice of Right to Sue is attached hereto incorporated by reference as Exhibit B.

5.      Jurisdiction over the claims set forth herein is conferred on this Court by 28 U.S.C. § 1331.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as the events and omissions giving rise to the claims set forth herein occurred within this District in Kansas City, Kansas.

**Facts Common to all Counts**

7.      Plaintiff is employed by the BPU. That employment began in 2008.

8.      Plaintiff is 53 years old.

9.      Plaintiff consistently met or exceeded BPU's reasonable expectations for her work performance at all relevant times.

10.    In 2012, Plaintiff joined BPU's Purchasing Department as a Procurement Contract Coordinator. Plaintiff held that position continuously until March 26, 2025. In that position, she reported to the Director of Purchasing and Supply.

11.    At all relevant times, there was one other Procurement Contract Coordinator in the Purchasing Department.  Despite identical titles and job descriptions, both the expectations and performance of Plaintiff were far greater than those of the other Coordinator.

12.    The Director of Purchasing and Supply often distributed duties of the other Coordinator to Plaintiff.

13.    In addition, Plaintiff was also required to perform, and in fact performed, the duties of the Assistant Purchasing Agent while the individual in that position was on long-term leave.

14.    In 2022, Plaintiff requested a reclassification and change to her job title in order accurately to reflect her workload, output, knowledge, experience, and education. The request was never acted upon by the BPU, and Plaintiff remained a Procurement Contract Coordinator.

15.    In or about 2022, the Director of Purchasing and Supply position became vacant and the BPU began a process to select a new Director.  Plaintiff followed BPU procedures to indicate her interest and be considered for the position.

16.    In the midst of the selection process, Plaintiff was away from the office for several days on a vacation which had been planned well in advance, a fact which was known to the BPU and which either was known or at least would have been easily ascertained by the BPU employees tasked with the selection process.

17.    Without any notice to Plaintiff and while she was away on this pre-planned vacation, the BPU scheduled Plaintiff's interview for the Director position to take place on the very first work day that she returned from vacation.

3

18.    Plaintiff was dressed for an ordinary work day, and not as she would have chosen to dress for an important job interview, and moreover had no reasonable time to prepare when she was informed of the interview scarcely two hours before it was to commence. She requested to reschedule the interview, but her request was denied.

19.    Left with no other alternative to continue in the selection process, Plaintiff participated in the last-minute interview with the BPU's Director of Human Resources and Chief Financial Officer that day.

20.    Though Plaintiff's relative lack of preparation was to be expected based upon the above-described circumstances, Plaintiff's interviewers appeared equally unprepared and generally disinterested. No copy of Plaintiff's resume was available at the interview.

21.    Upon information and belief, the Director of Purchasing position had already been filled by an external candidate, Becky Aldinger, before Plaintiff's interview ever began.

22.    In 2023, in a department staff meeting it was announced that an Assistant Purchasing Agent position would be posted. This job was colloquially referred to as "Jill's job" due to it being held by Jill Rogers previously. Because Plaintiff had been performing the duties of the Assistant Purchasing Agent for approximately 2 to 3 years due to Jill's long-term leave, Plaintiff believed she had an excellent chance of earning the position.

23.    However, instead of posting the Assistant Purchasing Agent position, a new position, Supply Chain Analyst, was created for the department. Nevertheless, as many of the duties of "Jill's job" would be assumed by this position, Plaintiff applied.

24.    An internal candidate, Kurt Hafner ("Hafner") a white male, from the accounting department expressed interest in the new Supply Chain Analyst position and explained to Aldinger that he had the knowledge and experience for the position and would even be willing

to simultaneously perform his accounting duties along with the purchasing duties. He also requested transition at his then-current rate of pay and not take the salary decrease the Supply Chain Analyst position was posted to receive.

25.     Upon information and belief, Aldinger initially agreed with Hafner and expressed her interest in making the transition possible to the Chief Administrative Officer/Chief Financial Officer ("CFO"). The CFO determined that if Hafner wanted to join the purchasing department, he would need to do so as a Supply Chain Analyst, and at the rate of pay posted. The CFO determined that the two positions would not be combined. Hafner then declined the position and a different and younger Caucasian male, Jonathan Jerrell ("Jerrell") was hired for the position.

26.     Upon information and belief, Jerrell was not a good fit and his poor performance and lack of direction from Aldinger eventually led to his termination.

27.     Following Jerrell's departure, Hafner began re-appearing in the department self-promoting his skills and experience to members of the IT department, the COO, and others.

28.     In or about July 2023, a new incarnation of "Jill's job" was posted with a new title, and Plaintiff applied. However, the posting included a new set of qualifications and requirements that appeared to specifically fit Hafner's skillset and experience. Plaintiff overheard a conversation between Aldinger and Hafner discussing the job posting and pay, and Aldinger was asking Hafner if the posting and pay looked "okay." Plaintiff was never approached and her input was never sought regarding the job posting.

29.     Furthermore, while the position was posted and before it was filled, upon information and belief Hafner was given a tour of the power plant by one of more BPU officials. Plaintiff was never approached regarding a tour of the power plant.

30.     Plaintiff was given an insincere interview for the position on or about August 14, 2023. In September 2023, the position was awarded to Hafner despite him having no industry specific experience, contract experience, or degree in any relevant field.

31.     Plaintiff, in addition to her considerable contracting and purchasing experience, holds a master's degree in organizational administration with an emphasis in Leadership which was earned via KCBPU's tuition reimbursement plan.

32.     On or about December 6, 2023, while Plaintiff was out of the office on medical leave, she received a Microsoft Team's invite for a compensation discussion to take place in January 2024. On or about January 23, 2024, the compensation discussion was held with Plaintiff, Aldinger, and an HR manager. Plaintiff was told that since "Jill's job" had been filled, she would not receive an increase in her salary. Plaintiff was further told that she actually made too much, but since BPU wanted to retain her, she would be allowed to retain her then-current rate of pay.

33.     Plaintiff also did not receive a title change. Hafner continued to perform his duties for the Accounting Department and IT while in the Purchasing Department. He received the title and pay while Plaintiff continued to perform many of the duties of the position.

34.     Upon information and belief, Plaintiff was deceived in believing she would receive the "Jill's job" position in any of its iterations. Plaintiff has been discriminated against for her race, age, and/or gender because she has been treated differently and overlooked regarding the positions she has interviewed for and has been more qualified than the recipients of those positions.

35.     BPU has failed to properly train or otherwise inform its supervisors and employees concerning the Company's duties and obligations under civil rights laws.

36.     By failing to take prompt and appropriate corrective action, BPU has condoned, ratified, and/or authorized the discrimination of its agents.

37.     BPU has failed to make good faith efforts to establish and enforce policies to prevent unlawful race discrimination against its African American employees.

**Count I – Employment Discrimination on the Basis of Race in Violation of Title VII**

38.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

39.     Plaintiff is an African American.

40.     Plaintiff has been employed by the BPU since 2008.

41.     The BPU engaged in a pattern, practice, and continuing action to string Plaintiff along, causing Plaintiff to believe she had the potential for promotion and salary advancement within the Purchasing Department, and indeed frequently calling upon her to perform many duties associated with those promotional opportunities, but without any intention to actually provide Plaintiff with those opportunities or even a fair shot at those opportunities, and instead consistently denied Plaintiff promotions and salary advances and failed to hire Plaintiff into positions for which she was highly qualified.

42.     Plaintiff's race was the motivating factor in all of her above-described mistreatment by BPU, and such actions constitute discrimination on the basis of race.

43.     BPU's purported non-discriminatory bases for the discriminatory actions described herein are pretextual.

44.     As a direct and proximate result of BPU's acts and omissions, Plaintiff has been deprived of income and other benefits of employment, both monetary and non-monetary.

45.     As a further direct and proximate result of BPU's acts and omissions, Plaintiff has suffered garden variety emotional distress including a loss of self-esteem, humiliation, and mental anguish.

46.     Plaintiff is entitled to recover, from Defendants, reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

47.     Defendant acted with malice, willfulness, or reckless indifference to the federally protected rights of Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant on this Count of her Complaint, for a finding that Plaintiff has been subjected to unlawful discrimination on the basis of race prohibited by Title VII, for all actual and compensatory damages, punitive damages for Defendants' conscious wrongdoing, injunctive and declaratory relief, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper under the circumstances.

**Count II – Employment Discrimination on the Basis of Sex in Violation of Title VII**

48.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

49.     Plaintiff is a female.

50.     Plaintiff has been employed by BPU since 2008.

51.     The BPU engaged in a pattern, practice, and continuing action to string Plaintiff along, causing Plaintiff to believe she had the potential for promotion and salary advancement within the Purchasing Department, and indeed frequently calling upon her to perform many duties associated with those promotional opportunities, but without any intention to actually provide Plaintiff with those opportunities or even a fair shot at those opportunities, and instead

consistently denied Plaintiff promotions and salary advances and failed to hire Plaintiff into positions for which she was highly qualified.

52.     Plaintiff's sex was the motivating factor in all of her above-described mistreatment by BPU, and such actions constitute discrimination on the basis of sex.

53.     BPU's purported non-discriminatory bases for the discriminatory actions described herein are pretextual.

54.     As a direct and proximate result of BPU's acts and omissions, Plaintiff has been deprived of income and other benefits of employment, both monetary and non-monetary.

55.     As a further direct and proximate result of BPU's acts and omissions, Plaintiff has suffered garden variety emotional distress including a loss of self-esteem, humiliation, and mental anguish.

WHEREFORE, Plaintiff prays for judgment against Defendant on this Count of her Complaint, for a finding that Plaintiff has been subjected to unlawful discrimination on the basis of sex prohibited by Title VII, for all actual and compensatory damages, punitive damages for Defendants' conscious wrongdoing, injunctive and declaratory relief, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper under the circumstances.

### Count III – Employment Discrimination on the Basis of Age in Violation of the ADEA

56.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

57.     Plaintiff is over 40 years of age.

58.     Plaintiff has been employed by the BPU since 2008.

59.     The BPU engaged in a pattern, practice, and continuing action to string Plaintiff along, causing Plaintiff to believe she had the potential for promotion and salary advancement

9

within the Purchasing Department, and indeed frequently calling upon her to perform many duties associated with those promotional opportunities, but without any intention to actually provide Plaintiff with those opportunities or even a fair shot at those opportunities, and instead consistently denied Plaintiff promotions and salary advances and failed to hire Plaintiff into positions for which she was highly qualified.

60.    Plaintiff's age was the cause-in-fact for all of her above-described mistreatment by BPU, and such actions constitute discrimination on the basis of age.

61.    BPU's purported non-discriminatory bases for the discriminatory actions described herein are pretextual.

62.    As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

63.    As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

64.    Defendant's conduct was willful thereby entitling Plaintiff to an equal amount as liquidated damages and other appropriate equitable relief.

65.    Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on this Count of her Complaint, for a finding that Plaintiff has been subjected to unlawful discrimination prohibited by ADEA, for all actual and compensatory damages, liquidated damages, injunctive and declaratory relief, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper under the circumstances.

## Jury Demand

Plaintiff hereby demands a trial by jury on all issues and causes of action and claims with respect to which she has a right to trial by jury.

## Designated Trial Location

Designation of place of trial is Kansas City, Kansas.

Respectfully Submitted,

KRIGEL NUGENT + MOORE P.C.

Ivan L. Nugent (24512)
4520 Main Street, Suite 700
Kansas City, Missouri 64111
Telephone: (816) 756-5800
Fax: (816) 756-1999
inugent@knmlaw.com
ATTORNEYS FOR PLAINTIFF

11